[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PENDENTE LITE ORDERS
On June 18, August 1 and August 15, 2002, the court heard testimony and received numerous exhibits regarding several motions in this pending dissolution of marriage action. Those facts as found by the court will be discussed as necessary for the determination of each motion.
Motion for Child Support (126)
The parties have two minor children issue of their marriage: Hillary, born January 16, 1996, and Alan, born April 6, 2001. On April 29, 2002, orders were entered by the court pursuant to the agreement of the parties which provided that: "The defendant shall pay the plaintiff child support in the amount of $192 per week plus $90/week payable to YMCA for work-related daycare expenses, without prejudice to either party in order to allow each attorney to review all financial documentation in anticipation of the 5/20/02 pendente lite hearing. The issue of retroactive child support shall be argued at the May 20, 2002 hearing. The plaintiff shall continue to maintain the children on her existing medical insurance policy as made available through her employer. The parties shall split all unreimbursed medical expenses for the children pursuant to the guidelines wife to pay first $100/child toward unreimbursed expenses."
The Defendant is employed by the state of Connecticut as a systems developer. He makes $1,044 gross per week and nets approximately $740 per week based on his financial affidavit and Child Support Guideline worksheet submitted at the August 15th hearing. He is also director for Connecticut of the United States Specialty Sports Association (USSSA) and has recently become the state director for Rhode Island. In this capacity he registers teams to play in softball tournaments that he organizes. He also runs a local town league for which he is paid by the town. In addition, he makes money from the sale of softballs and other various equipment as well as occasionally from hotel finder fees. He spends approximately thirty hours per week on this endeavor. The Plaintiff CT Page 12195 disputes the amount of the Defendant's income from this business. However comparing the profit and loss statement for 2001 prepared by the Plaintiff (Exhibit 11) and that prepared by the Defendant (Exhibit 15), the parties agree that his gross income is between $74,000 and $76,000 per year. Although the Plaintiff claims that the Defendant receives cash not reported on these statements, as evidenced by the $13,100 in cash she found in the home in July and August 2001, the Defendant's records do account for the cash he has received except where cash may have been received on the field at a tournament and used to pay expenses, such as umpires, in cash at that time. The Defendant's statement is also consistent with what was reported on his 2001 federal tax return. Both parties agree that the $5,729 the Defendant deducted as a bad debt, which represents the cash the Plaintiff took from the home in August 2001, should be added back in when determining the Defendant's profit. Where the parties differ significantly is the expenses to be deducted to determine the Defendant's net income from the business. The Plaintiff's statement, for example, does not include the Defendant's total expenses for automobile, telephone or travel. From the evidence presented, the court cannot find that the expenses the Defendant claims are unreasonable and should be discounted by the court. Based on his 2001 tax return the Defendant nets $9,012 per year. Although the Defendant claimed that he would realize less income this year because of the added expenses he would incur to hire help to run the tournaments because he could not do them all himself because of his child care responsibilities, this may be somewhat offset by the added income from his work in Rhode Island. Therefore the court finds that the Defendant nets approximately $9,000 per year or $173 per week from his USSSA business, which represents approximately $138 per week net after taxes. According to the Child Support Guidelines, gross income includes wages from employment up to a maximum of 52 hours per week. Accordingly the court will consider seventeen hours or fifty-seven percent of the $173 as additional income or $99 for a total gross income of $1,143 for purposes of the Child Support Guidelines and a total net income of $819 per week.
The Plaintiff is a certified public accountant who also works for the State. She works four days per week, 32 hours per week. She makes gross income of $1,173 per week and nets $910 per week according to her financial affidavit.[1] The children are in day care at the YMCA five days per week at a cost of $313 per week.
Therefore for purposes of the Child Support Guidelines, the court finds the Plaintiff's net income to be $910 and the Defendant's net income to be $819 for a combined net weekly income of $1,729. The basic child support obligation per the guidelines is $441 plus the children's health insurance premiums of $12 totals a current support obligation of $453. CT Page 12196 Thus the Defendant shall pay $213 per week child support based on a distribution of the combined net income of forty-seven per cent to the Defendant and fifty-three per cent to the Plaintiff. As to the day care expense, the Guidelines provide that for purposes of determining the child care contribution, "child care costs shall qualify for a contribution from the noncustodial parent only to the extent that they: . . . are necessary to allow a parent to maintain employment." Here the Plaintiff pays for child care for five days per week although she only works four days per week. Therefore the fifth day expense is not necessary to allow her to maintain employment. Consequently, the Defendant's contribution for child care will be calculated based on four-fifths of the $313 per week child care expense incurred by the Plaintiff or $250. The percentage of this obligation to be borne by each party according to the guidelines is the Plaintiff sixty-five per cent and the Defendant thirty-five per cent. Thus the Defendant shall pay $88 per week toward child care.
The Plaintiff claims that the Defendant agreed that any support order would be retroactive to October 9, 2001, the date of the originally scheduled hearing on the motion for support. The court finds that no such agreement existed. Although the Plaintiff claims that her attorney stated such in a letter to Defendant's counsel, there was no proof that the Defendant or his counsel consented to her demand. Pursuant to General Statutes § 46b-83 child support may be awarded from the date of the filing of an application therefor. The motion before the court here is that dated February 28, 2002 which was served on the Defendant on that same date. Therefor the orders entered herein shall be retroactive to that date. Since approximately March 20th the Defendant has been obligated, by agreement or court order, to pay $282 per week. This leaves an arrearage for that period to September 19th of $19 per week for twenty-seven weeks or $513. The arrearage for the period February 28th
to March 20th is three weeks at $301 per week or $903 for a total arrearage of $1,416. This shall be paid at the rate of $42 per week in accordance with the Guidelines. The court finds that the Defendant is not entitled to any credit for any payments other than those noted because although some payments were made to the Plaintiff by the Defendant after he left the home in August 2001 there was no evidence that these payments were made between February 28th and March 20th.
Motion for Counsel Fees and Costs, Pendente Lite (131)
The Defendant requests a reasonable sum in counsel fees and costs to prosecute this action. Pursuant to General Statutes § 46b-62 the court can order the Plaintiff to pay the reasonable attorney's fees of the Defendant in accordance with the parties' respective financial abilities CT Page 12197 and the criteria set forth in General Statutes § 46b-82. The Defendant has sufficient income and resources to pay his own counsel fees and cost to prosecute this action. He has a sports memorabilia collection of some value, although the exact amount of which is unknown, as well as three automobiles.
The motion is denied without prejudice to renewal at the time of the final hearing in this matter.
Motion for Return of Funds Pendente Lite (122)
The Defendant requests that the court order the Plaintiff to turn over to him $11,000 he claims the Plaintiff took without his knowledge and consent. The Plaintiff admits that she took $10,250 in cash from the Defendant's briefcase and other locations in the family home in July and August 2001. She claims that she took the money because she was concerned that once the Defendant left she would be unable to pay expenses yet she turned the money over to her mother to hold. This was prior to the institution of this action.
Pursuant to General Statutes § 46b-81, the court has jurisdiction to assign to either the husband or wife all or any part of the estate of the other only at the time of entering a decree dissolving a marriage. Here the funds in the Plaintiff's hands, rightly or wrongly, are now part of her estate and not until a decree is entered dissolving the parties' marriage does the court have jurisdiction to order a transfer to the Defendant of any part of the estate of the Plaintiff.
The Motion is denied.
Motion for Permission to Refinance Family Home (120)
The Plaintiff requests that the court grant her permission to refinance the family home in order to lower the mortgage payment. The home is jointly owned by the parties and the present mortgage note is a joint obligation of the parties. The Defendant argues that there is no authority for the court to enter such an order.
The court agrees that it has no authority to order the Defendant to enter into a new mortgage note or deed pendente lite.
The Motion is denied.
Computer
CT Page 12198
The court's order of April 29th also provided that the "issue of the possession of the computer shall be dealt with on 5/20/02." The Defendant claims that he used this computer for business.
Once again, the computer is part of the marital assets which are only subject to distribution by the court at the time of the entry of the final decree in this matter.
The Motion is denied.
Jane S. Scholl, J.